IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

THE ARORA GROUP, INC.,

       **Plaintiff,**

       **v.**

       **Civil Action No.  AW-04-3057**

TRANSCONTINENTAL INSURANCE
CO.,

       **Defendant.**

---

## MEMORANDUM OPINION

Plaintiff The Arora Group, Inc. ("Arora") seeks to obtain coverage under Defendant Transcontinental Insurance Co.'s ("Transcontinental") general liability policy ("the Policy") for a claim arising out of the death of a patient at the National Naval Medical Center in Bethesda, Maryland.  In particular, this case involves, *inter alia*, the question of whether the deceased patient's injuries, incurred during an x-ray treatment, are specifically excluded by the "professional services" clause of the Policy.  Currently before the Court are Plaintiff's Motion for Summary Judgment [11] and Defendant's Cross-Motion for Summary Judgment [14].  The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary.  See Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Cross-Motion for Summary Judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

I.      Factual Background

The following facts are undisputed.  Arora engages in the business of employing medical and

technical personnel whom it assigns to work in medical facilities owned by or under contract to the

Government.  On October 1, 1998, Arora entered into a contract with the United States, agreeing to,

among other things, "provide fully qualified Radiologic Technologists . . . to perform services in the

Radiology Department for and within the National Naval Medical Center" in Bethesda ("Bethesda Naval").


On April 9, 1999, Arora subsequently purchased a general liability insurance policy from

Transcontinental which was effective through April 8, 2002.[1]  The Policy provided business owners liability

coverage with applicable limits of $1 million per occurrence.  The Policy stated, "We will pay those sums

that the insured becomes legally obligated to pay as damages because of 'bodily injury,'" caused by Arora

or its employees.  The Policy also contained an exclusionary clause which stated, in relevant part:

> This insurance does not apply to: . . .
>
> j. Professional Services
> "Bodily injury," "property damage," "personal injury" or "advertising
> injury" due to rendering or failure to render any *professional service*.
> This includes but is not limited to: . . .

---

[1] Despite Arora's contract with the government specific requirement that Arora obtain
malpractice insurance, Arora failed to purchase malpractice insurance prior to June 2001.

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice
or instruction; . . . .

Exhibit 1 at ¶ B.1.j.

On January 8, 2000, Robert A. Wint ("Mr. Wint"), a patient at Bethesda Naval had a fever workup and was sent to the Radiology Department by Bethesda Naval's staff employees.  Mr. Wint was placed in a wheel chair and reported to the Radiology Department in the wheel chair without his walker.  For the first series of films, the radiology technician William Brooke ("Brooke"), an Arora radiology technician, asked Mr. Wint if he thought he could stand.  Mr. Wint replied in the negative.  As a result, the first series of films were taken while Mr. Wint remained in a wheel chair.  For the next series of films, Brook placed Mr. Wint on a stool since Brooke was not advised by Bethesda Naval staff employees that Mr. Wint had any balance or mobility problems.  Brooke left Mr. Wint unattended and unprotected, in violation of the Guidelines for the Seriously Ill and Bethesda Naval's protocol for non-ambulatory patients.  Due to his instability, Mr. Wint fell from the stool to the cement floor in the Radiology Department.  As a result of the fall, Mr. Wint sustained serious and life threatening head injuries.  On January 23, 2000, Mr. Wint died as a result of the fall.

On or about April 30, 2001, Arora reported to Transcontinental a claim regarding Mr. Wint.  The information provided to Transcontinental was that Brooke had given a chest x-ray to Mr. Wint, left him unattended to retrieve the x-ray, and returned ninety seconds later to find Mr. Wint lying on the floor.  Based on the information provided, Transcontinental informed Arora that its loss would be considered a "Professional Incident" as defined by the Policy and that coverage would be denied.

II.     Procedural History of Prior Action

On July 17, 2002, Elaine Wint ("Wint"), on behalf of her deceased husband and herself, brought suit against the Government in this Court, alleging claims based on theories of simple negligence against Brooke and Arora.  Specifically, the suit, as amended, alleged that Brooke left Mr. Wint, who was non-ambulatory, unattended on a stool, and during Brooke's absence, Mr. Wint fell from the stool, suffered bodily injury, and died.

On December 3, 2003, Wint filed a Second Amended Complaint.  Aside from minor additions and substitutions, the allegations of negligence against Arora and Brooke were virtually identical to those in the First Amended Complaint.  On March 5, 2004, Wint filed a Third Amended Complaint, which added Counts III and IV, alleging negligent training and negligent supervision by Arora, respectively.

On May 18, 2004, Transcontinental provided a statement maintaining its position that the allegations in the complaint amount to "professional services" and are excluded from coverage.  On June 8, 2004, Arora settled with Wint and agreed to pay $250,000, an amount equal to the money paid by the United States to settle the Wint claim in its entirety.

III.    Procedural History of Current Action

On September 24, 2004, Arora brought the current action against CNA Insurance Companies[2] and Transcontinental alleging, as a single count, that Transcontinental improperly relied on the professional

_____

[2] CNA Insurance Companies was subsequently terminated from this action on December 8, 2004.  Both Plaintiff and Defendant Transcontinental stipulated that Transcontinental was the proper party defendant.

services exclusion to deny coverage to, and a duty to defend, Arora under Arora's Transcontinental Policy.

On January 14, 2005, Arora filed a Motion for Summary Judgment.  On February 7, 2005, Transcontinental filed a Cross-Motion for Summary Judgment.  Both motions are ripe, and an opinion is now issued.

### STANDARD OF REVIEW

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).  Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, Catrett, 477 U.S. at 325, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### DISCUSSION

Arora seeks a declaratory judgment that Transcontinental breached both its duty to defend and duty to indemnify Arora in the Wint lawsuit.  Arora contends that the allegations made by Wint against Arora were not claims about "rendering or failure to render any professional services," and therefore Transcontinental improperly relied on the professional services exclusion to deny coverage to Arora and to defend it.  Specifically, Arora contends that (1) because the Policy provision is ambiguous, then the provision is to be construed against the insurer; and (2) the complained of occurrences — Brooke's

5

decision to leave Mr. Wint unattended, and Arora's allegedly negligent training and supervision of Brooke — bear no causal connection to the rendering or failure to render professional services.

In a Cross-Motion for Summary Judgment, Transcontinental argues that the professional services exclusion is applicable to Wint's claims. In particular, Transcontinental argues that (1) no ambiguity exists; and (2) the facts alleged against Arora demonstrate that Brooke's acts or omissions were an integral part of the x-ray treatment. Therefore, Transcontinental contends that insurance coverage was properly denied as Brooke's acts constitute professional judgments under the Policy's exclusionary clause.

Because both motions involve the same issue of coverage under the Policy, the essential question for both motions is whether Brooke's action qualifies as rendering or a failure to render "professional services" under the Policy.

## I.    Basic Principles of Coverage

Under Maryland law, "the obligation of an insurer to defend its insured under a contract provision . . . is determined by the allegations in the tort actions." Am. Home Assurance v. Osbourne, 47 Md.App. 73, 79, 422 A.2d 8 (1980). Generally, "[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." Brohawn, 276 Md. at 408, 347 A.2d 842 (citations omitted) (emphasis in original).

An insurance company's duty to pay a resulting judgment is separate and distinct from a company's duty to defend. See e.g., Steyer v. Westvaco Corp., 450 F.Supp. 384, 389 (D. Md. 1978); Riviera Beach Volunteer Fire Co. v. Fid. & Cas. Co. of N.Y., 388 F.Supp. 1114, 1120 (D. Md. 1975).

6

Generally, the question of whether a company must indemnify "turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." Steyer, 450 F.Supp. at 389 (citation omitted). However, even if a case settles before its final adjudication, ultimately, a company's duty to pay a judgment "depend[s] on the scope of coverage under the policy." Id.

## II.     Transcontinental's Duty to Indemnify

Arora first argues that the professional services exclusion is ambiguous and therefore should be interpreted against the insurer Transcontinental.[3]  Specifically, Arora argues that, because the insurance policy does not provide an *explicit definition* of "professional services," this Court should find the term "professional services" to be ambiguous and consequently construct the policy against Transcontinental. The Court disagrees with this argument.

Although Arora contends that the Policy should be construed strongly against the insurer, Maryland does not follow this rule. Quite the contrary, Maryland courts have expressly emphasized that:

> Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole.

Cheney v. Bell Nat'l Life, 315 Md. 761, 766 (1989). Additionally, the Maryland Court of Appeals has repeatedly noted that "[i]n the interpretation of the meaning of an insurance contract," it "accord[s] a word

---

[3]The Court notes that Plaintiff first argued that the exclusion clause was not ambiguous and clearly did not exclude Wint's claims from coverage by Transcontinental.  Arora, however, provided no case law or authorities to support its argument and appears to have switched its position.  Nevertheless, Plaintiff's new position that the exclusion clause is ambiguous lacks merit.

its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in

a special or technical sense." Assicurazioni Generali v. Neil, 160 F.3d 997, 1001 (4th Cir. 1998) (quoting

Cheney v. Bell Nat'l Life Ins. Co., 315 Md. 761, 556 A.2d 1135, 1138 (1989); citing Chantel Assoc. v.

Mt. Vernon, 338 Md. 131, 656 A.2d 779, 784-85 (1995)).  Accordingly, this Court's analysis begins with

the plain language of the Policy.  See Kendall v. Nationwide Ins. Co., 348 Md. 157, 702 A.2d 767, 771

(1997) ("Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary

principle of construction is to apply the terms of the insurance contract itself.") (internal quotation omitted).

The Policy hinges upon the application of the professional services clause, which states, in pertinent

part:

> This insurance does not apply to: . . .
>
> j. Professional Services
> "Bodily injury," "property damage," "personal injury" or "advertising
> injury" due to rendering or failure to render any *professional service*.
> This includes but is not limited to: . . .
>
> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice
> or instruction; . . . .

Exhibit 1 at ¶ B.1.j.

As applied here, this Court cannot find that the plain language of the Policy is susceptible to multiple

meanings.  See Collier v. MD-Individual Practice, 327 Md. 1, 607 A.2d 537, 539 (1992) (stating that

Maryland law provides that language in an insurance policy is ambiguous if it is "general" and may suggest

two meanings to a reasonably prudent layperson).  It is true that the term "professional services" is

undefined in the Policy's exclusionary clause.  Nevertheless, this Court cannot find that the mere absence of a specific definition of "professional services" makes the Policy ambiguous in this context.  More to the point, a reasonable person could not find the term "professional services" subject to two meanings because the exclusionary clause expressly includes specific examples of the professional services intended to be excluded, i.e., "[m]edical, surgical, dental, x-ray or nursing services treatment, advice or instruction."  Stated differently, a reasonable person would not find every act performed by an individual to be a professional service, but rather would consider the acts included as examples of "professional services" to be guideposts.  It appears therefore that the use of the term "professional" services, in conjunction with the listed examples, seems to imply the use or application of special skills or intellectual judgments.  See e.g., Utica Mut. Ins. Co. v. Miller, 130 Md. App. 373, 387 (2000) (finding that a general liability policy that did not expressly define an exclusion based on "professional services" encompasses the "use or application of special learning or attainments of some kind.").

Moreover, the Court notes that Arora did not raise the issue of ambiguity until its opposition brief. In fact, Arora's original Motion for Summary Judgment expressly conceded that "[t]here is no ambiguity in the policy."

For all of the above stated reasons, this Court finds no ambiguity in the professional service exclusionary clause.[4]  Accordingly, where the language of the contract is unambiguous, its plain meaning

---

[4]Plaintiff also attempts to draw a distinction between the phrases "due to" and "arising out of" in order to narrow the scope of the exclusionary clause.  The Court is not persuaded.

No Maryland authority has subscribed to such a distinction, and the Maryland cases cited by Arora make no distinction between the two phrases.  Given the dearth of Maryland or other jurisdictional authority for the distinction posited by Arora, the Court affords the term "due to" its usual,

will be given effect.  Aetna Cas. & Sur. Co. v. Ins. Comm'r, 293 Md. 409, 420, 445 A.2d 14 (1982).

Arora next argues that the complained of occurrences bear no causal connection to the rendering or failure to render professional services.  Again, this Court cannot agree.

Maryland courts have emphasized that "in determining whether a particular act is of a professional nature or a 'professional service' [courts] must look not to the title or character of the party performing the act, but to the act itself."  Miller, 130 Md. App. at 388.  In ascertaining the scope of the term "professional services," the Court finds the Ratliff v. Employers' Liab. Assurance Corp., 515 S.W. 2d 225 (Ky. 1974), case particularly instructive here.

Ratliff involved an underlying lawsuit, where an alcoholic patient, who fell while walking unassisted from the nursing station to his bed, sued the hospital and obtained a judgment.  Id. at 227. Prior to the patient's fall, he had walked to the nurse's station near his room and asked to be assisted to the men's restroom.  Id.  The patient testified that he felt he was about to suffer an alcoholic seizure, and a nurse at the hospital assisted him to the restroom's door and then walked him back to the nurse's station.  Id. Thereafter, the patient began his walk back to his room, without assistance, when he fell and broke his leg. Id.

Because the hospital had no property to satisfy the judgment, Ratliff then brought an action against the hospital's insurance company which had issued a general liability insurance policy to the hospital.  Id. at 226.  The exclusion clause, titled "Exclusion of Malpractice and Professional Services," excluded "injury,

---

ordinary and accepted meaning – "a quality or attribute ascribed to its possessor 'as an effect or the result to its cause, or origin; owing to, caused by, in consequence of.'" American Stores Co. v. Herman, 166 Md. 312, 171 A. 54, 58 (1934) (citing Oxford Dictionary).

sickness, disease, death or destruction due to . . . [t]he rendering of or failure to render (a) medical, surgical, dental, x-ray or nursing service or treatment . . . ."  Id.  The court held that the patient's injuries fell within the malpractice and professional services exclusion on the basis that the negligent act involved professional training or experience.  Id.  at 229-30.  In particular, the court reasoned that:

> [T]he negligence of the Foundation Hospital is based upon <u>the failure of the nurses to recognize [patient's] debilitated condition</u> as a result of acute alcoholism and the administration of drugs by the hospital.  <u>Determining whether [patient] was capable of returning safely from the nurses' station to his bed required the nurses to exercise their expert professional ability.</u>  Any negligence on the part of the hospital in deciding that Ratliff could return to bed unassisted was clearly a failure to render professional care.

Id. at 230 (emphasis added).

The Court finds the <u>Ratliff</u> reasoning applicable to the instant case.  Here, Mr. Wint's fatal injuries, according to the allegations in Wint's complaint, were due to the negligence of Brooke, the medical technician, who placed Mr. Wint on a stool during an x-ray examination despite failing to recognize Mr. Wint's debilitating condition.  In other words, Brooke's determination that Mr. Wint was capable of being safely sitting on the stool during the x-ray procedure required a technician, such as Brooke's, to exercise his expert professional ability.

In coming to this conclusion, it is helpful to recount the facts observed or known by Brooke at the time of Mr. Wint's fall.  Mr. Wint had arrived at the Radiology Department in a wheelchair.  When Brooke asked Mr. Wint if he was able to stand, Mr. Wint answered in the negative.  Despite clearly knowing that Mr. Wint had an unstable disposition, Brooke took Mr. Wint out of his wheelchair, had him sit on a stool, and then left the room for 90 seconds.  Similar to <u>Ratliff</u>, the negligence of Arora is based upon Brooke's

deficient recognition of Mr. Wint's debilitated condition.  Stated differently, the negligence of Arora

occurred as a result of its medical technician's failure to exercise ordinary care or attention to the facts

known or observed by him.  Accordingly, this Court finds that the determination of whether Mr. Wint was

capable of safely sitting on a stool while unattended required Brooke to exercise his expert professional

ability.

Plaintiff relies heavily on <u>Am. Cas. Co. v. Hartford Ins. Co.</u>, 479 So.2d 577, 579 (La. 1985), to

argue that the act of placing Mr. Wint on the stool was not the exercise of a particular skill or professional

judgment, but rather non-professional manual or administrative task.  In <u>Hartford</u>, an EKG operator

instructed the patient to remove his shirt and place himself upon the EKG examination table.  <u>Id.</u> at 578.

The patient walked into the examination room without assistance and gave no indication that he needed

assistance.  <u>Id.</u>  While the EKG operator's back was turned to the patient, the patient fell while climbing

up or moving about on the table.  <u>Id.</u>  The court concluded that the actions of the EKG operator were

purely mechanical and administrative in nature.  <u>Id.</u>

Wint's argument is unpersuasive and has been specifically rejected by another court.  In

<u>Multnomah County v. Oregon Auto. Ins. Co.</u>, 256 Or. 24, 470 P.2d 147 (1970), an inmate brought suit

against a county jail for the failure of a jail medical technician to administer insulin to the inmate.  The court

held that the professional services exclusion unambiguously excluded coverage, rejecting the insured's

argument that administering insulin was purely mechanical or physical.  The court noted:

> However, it is our view that something more was required than the
> physical ability to administer the drug and that something more was the
> ability to determine whether [inmate's] physical condition was such that an
> injection of insulin was required.  Obviously, it was.  And the technician

did not have the professional competence to recognize it.

Id. at 150.

In the instant case, "something more" than a purely mechanical or physical act was required to properly administer Mr. Wint's x-rays.  In particular, that "something more" was the ability to determine whether Mr. Wint was in a condition to be able to sit on a stool unattended.  Thus, while the patient in Hartford gave no indication that he needed assistance in climbing the EKG examination table, both the inmate in Multnomah, and Mr. Wint in the present case, were in such obvious conditions that medical professional would properly recognize and treat.

Moreover, Hartford is inapposite to the instant case because of the differing language of the policies.  The policy in Hartford excludes injuries "caused by service or treatment conducive to health or of a professional nature."  Hartford, 479 So.2d at 579.  The Transcontinental policy, on the other hand, excludes injuries "due to rendering or failure to render any professional services," and defines "professional services," partially, as:

> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice
> or instruction; . . . .

Brooke's act of taking Mr. Wint out of his wheelchair and having him sit on a stool undoubtedly falls within the category of "x-ray . . . services, treatment, advice or instruction."  Therefore, pursuant to the Transcontinental policy's language, the Court finds that Brooke's negligent act amounted to a failure to render professional services.

Plaintiff also relies on a multitude of cases, including cases from this and other jurisdictions, that

determined certain negligent acts to be non-professional in nature.  See e.g., Warfield-Dorsey Co. v. The Travelers Cas. & Sur. Co. of Illinois, 66 F.Supp.2d 681 (D. Md. 1999) (misrepresentation by an insurance broker of a business associate's character);  Jefferson Ins. Co. v. Nat'l Union Fire Ins. Co., 42 Mass.App.Ct 94, 677 N.E.2d 255 (1997) (negligent miscommunication between an ambulance company's radio dispatcher and the ambulance attendants); Roe v. Federal Ins. Co., 412 Mass. 43, 587 N.E.2d 214 (1992) (a dentist's improper sexual relationship with a patient); Guaranty Nat'l Ins. Co. v. North River Ins. Co., 909 F.2d 133 (5th Cir. 1990) (failure to secure the windows of an open unit for a psychiatric patient). None of these cases, however, contain the language of the Transcontinental policy – that "professional services" include "x-ray . . . services *treatment, advice or instruction*."  The broad ambit of the term "professional services" in the Transcontinental policy stands out among all other insurance policies cited. Therefore, the Court finds Plaintiff's cited cases to be inapposite to the instant case.

## III.     Transcontinental's Duty to Defend

Arora argues that Transcontinental breached its duty to defend because there was a *potentiality* that Wint's claims could be covered by the Transcontinental policy. This Court cannot agree.

Transcontinental clearly had no duty to defend Arora based on any of the allegations in the underlying action.  Because the parties in the underlying action have reached a settlement, agreeing to pay $250,000, the issue of whether Transcontinental must defend Arora against any claims alleged in the underlying action is now moot.  See USAA Cas. Ins. Co. v. Mummert, 213 F.Supp.2d 538, 541 (D. Md. 2002) (finding moot the question of duty to defend in a homeowners insurance action because the parties of the underlying case had settled); Bailer v. Erie Ins. Exch., 344 Md. 515, 519, 687 A.2d 1375 (1997)

(holding that an action for a declaratory judgment or decree may not be used to decide moot questions).


## CONCLUSION

For the aforementioned reasons, the Court DENIES Arora's Motion for Summary Judgment and

GRANTS Transcontinental's Cross-Motion for Summary Judgment.  An Order consistent with these

rulings shall follow.

<u>August 22, 2005</u>                                                    <u>                /s/                </u>
Date                                                                      Alexander Williams, Jr.
                                                                          United States District Judge